ALICE E. GOULD, Appellant, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

Third Department, June 30, 1919.

Insurance — action upon life insurance policy — when policy does not lapse — effect of receipt and use of check by company for premium due — failure to serve notice under section 92 of Insurance Law — enforcement of forfeiture.

In an action upon a policy of life insurance, it appeared that prior to July 23, 1915, on which date the balance of a premium for March 23, 1915, became due, the company mailed the assured a statement of the amount due and the day on which it must be paid, and that on March 29, 1916, the plaintiff's husband, upon whose life the policy was issued, sent to the company his check for the amount due on the policy July 23, 1915, and on the same date the company replied acknowledging receipt of said amount for premium due in March, 1915, but stated that before it would consider the restoration of the policy it would require a certificate of continued good health of the assured. The company raised no objection to the amount of the check and collected the same in the usual course and applied the proceeds to its own use.

*Held,* that the company received the check in payment of the balance due upon the 1915 premium, and that at the time the check was received and used the days of grace for the payment of the 1916 premium had not expired and that the company by not serving notice under section 92 of the Insurance Law is not in a position to claim that the policy is without force.

A party seeking to enforce a forfeiture or to require the strict performance of a contract by another should adopt strict practice and leave no doubt as to its position.

The insurance company in this case cannot complain while asking strict practice that its uncertain acts should be construed unfavorably to it.

APPEAL by the plaintiff, Alice E. Gould, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 19th day of January, 1918, upon the decision of the court dismissing the complaint after a trial before the court, a jury having been waived.

*Milford D. Whedon* [*Rogers & Sawyer* with him on the brief], for the appellant.

*Alexander & Green* [*Charles W. Pierson* of counsel], for the respondent.

JOHN M. KELLOGG, P. J.:

The second premium upon the policy in question became due March 23, 1915, and the statutory notices with reference to it had been duly given. The payment was not then made, but from time to time extensions were made by which ninety-nine dollars and ninety-two cents, the balance of the premium, became due July 23, 1915, and concededly it was not paid at that time. The defendant thereafter was in position to treat the policy as ended and to deny to the plaintiff any rights thereunder. Its position here depends upon its own acts. It is not liable unless some act upon its part has waived the conditions existing on that date and has vitalized the policy. Prior to July 23, 1915, the company mailed the assured a statement of the amount due and the day on which it must be paid, and asked that that statement be returned with the remittance. On March 29, 1916, plaintiff's husband, upon whose life the policy was issued, sent to the company his check for the ninety-nine dollars and ninety-two cents, the exact amount due on the policy July 23, 1915, returning the company's statement, and asked it to return the receipt to him. The company on that date replied: " We are in receipt of your remittance for $99.92 for premium which was due in March, 1915, on policy No. 1892687. Before the Society will consider the restoration of this policy, they will require a certificate of continued good health on the accompanying form. Dr. Willis A. Tenney, of Granville, our examiner, will be very glad to fill this in for you and we will appreciate it if you will get in touch with him at your earliest convenience."

The company collected the check in usual course through the banks and applied the proceeds to its own uses. The husband died May 27, 1916, and proofs of loss were duly filed.

It will be noted that the company raised no objection to the amount of the check. Technically it was entitled to interest on the payment from July, 1915. We assume, however, that no question was raised upon that subject because, if the March, 1915, premium was paid, a dividend would be credited to the policy on March 23, 1916, of seventeen dollars and seventy-nine cents.

The company had been fully paid for carrying the insurance up to July 23, 1915, and, if it desired to rely upon the fact that

the policy had effectually lapsed, it had no right to cash the check and use its proceeds, and those acts, so entirely inconsistent with the theory that there was no insurance, require explanation. It knew that the check was sent to it solely in payment of the back premium and in order to keep the policy alive. It would have been easy to have returned the check, with a statement that the policy had lapsed, but if there was a desire to reinstate it the company would do so upon receipt of the balance unpaid of the 1915 premium and the payment of the 1916 premium, then past due, together with a satisfactory certificate of health. Such action upon its part would have left no doubt as to the exact standing of the parties at the time. It is true that it suggested that the company could not consider a restoration of the policy without a certificate of health; but that statement must be read in connection with the fact that the company was cashing the check sent to it for the 1915 premium and using the proceeds. Its letter might well be understood to mean that notwithstanding the fact that the 1915 premium was paid in full, nevertheless the policy was subject to forfeiture because of the default in paying the 1916 premium and that the certificate of health was required before the company would consider the acceptance of the 1916 premium and the restoration of the policy. Upon the receipt of the letter, those interested in the policy may well have considered that the company had accepted and used the check sent to it for the 1915 premium but had not given the notice required by law as to the 1916 premium, and that, in the absence of such notice, the policy would continue alive under the provisions of section 92 of the Insurance Law, for a time at least. It may be that if the notice had been served the 1916 premium would have been paid and the certificate of health returned. It is unnecessary, however, to speculate upon that subject.

There is nothing in the record to indicate that the company ever offered to return the ninety-nine dollars and ninety-two cents which it received for the balance of the 1915 premium until it served its brief upon this appeal. The plaintiff, in her brief, urges that if she cannot recover upon the policy she is entitled to judgment for that sum of money, which contention is met in the defendant's brief by the state-

ment that the money belongs to the estate of the husband and the plaintiff cannot recover it, but if his estate is administered upon it will cheerfully pay it. Before action brought the company never suggested in any way that it was retaining the check for the benefit of the sender, or that there was any doubt or qualification as to its right to use the proceeds. The husband never undertook to loan money to the insurance company, or to place his money with it for safe keeping; he did undertake to pay the premium which was in default, and the company, knowing his intention, accepted it and used the proceeds as its own.

A party seeking to enforce a forfeiture, or to require the strict performance of a contract by another, should adopt strict practice and leave no doubt as to its position. If the receipt and use of the check is reasonably capable of two different constructions, and if the exact meaning of the defendant's letter is not clear, the court may well construe its acts most favorably to the assured. The defendant cannot complain, while asking strict practice, that its uncertain acts should be construed unfavorably to it.

There had been no loss upon the policy. The company might have deemed it good business to treat the money as a payment of the premium for the previous year and to reinstate the policy for the 1916 default upon receiving a health certificate. That, under all the circumstances, is not an unreasonable construction of its letter and acts. If that was its intention, its mistake was in overlooking the provisions of section 92 of the Insurance Law, which provides that no forfeiture shall take place within one year after default in the absence of the required notice, and concededly no notice was given with reference to the 1916 premium. If the check is treated as a payment of the 1915 premium, the company was in error in assuming that it had the right to demand a health certificate within the days of grace at least. If the company received the money as a payment of the 1915 premium, it created a new situation by which the only existing default was with reference to the 1916 premium, and, in the absence of the notice required, that default was not available to it. Quite probably defendant did not mean to revive the policy

for the year 1916, but its secret intentions are not controlling. We are not particularly interested in the exact motive which prompted the defendant to take and use the check; we are only interested in determining what was the legal effect of its action and whether its action now permits it to claim that the 1915 premium was not paid. As matter of fact and of law I think we should hold that the company received the check in payment of the balance due upon the 1915 premium and that, at the time the check was received and used, the days of grace for the payment of the 1916 premium had not expired and that the company, by not serving the notice, is not in a position to claim that the policy is without force.

The judgment should, therefore, be reversed, upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed upon the law and facts, and new trial granted, with costs to the appellant to abide the event. The court disapproves of the fifth, eleventh and twelfth findings of fact.